*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RUTH E. PLOSKI,

       Plaintiff-Appellee,

v

DAVID L. WISZ,

       Defendant-Appellant.

UNPUBLISHED
July 21, 2022

No. 358802
Oakland Circuit Court
Family Division
LC No. 2015-837993-DM

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right an order denying his motion to change custody and modify parenting time. Finding no error requiring reversal, we affirm.

Defendant and plaintiff had one child together, DHW, before their marriage was annulled in 2017. Although the parties were originally granted joint legal and physical custody in the consent judgment of annulment, the trial court granted plaintiff sole legal and physical custody of DHW in April 2019 after a lengthy evidentiary hearing. Defendant was granted supervised parenting time three days per week. This order was affirmed by this Court. *Ploski v Wisz*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2019 (Docket No. 348792). As explained in this Court's opinion, the change in custody and parenting time was primarily brought about by evidence that defendant repeatedly disobeyed court orders and parenting-time rules, prioritized his personal vendettas over DHW's precarious mental health, and continuously made unsupported allegations that plaintiff and her family were abusive. *Id*. at 9-12.

In February 2020, the parties agreed to entry of a stipulated order establishing a three-phase schedule for defendant to return to unsupervised parenting time. In the first phase, defendant would have three supervised parenting-time visits each week. In the second phase, defendant would continue the same general parenting-time schedule, but only every other visit would be supervised. The third phase involved parenting time without any supervision. The order provided that defendant would automatically transition to each successive phase after a period of time unless the parties' arbitrator determined that a problem required delay of the automatic progression. The

stipulated order also provided a number of rules about defendant's conduct and the activities he could undertake with DHW during parenting time.

The phases did not progress as contemplated by the stipulated order because plaintiff raised concerns with the arbitrator, thereby triggering the delay provision. As of December 2020, defendant was in the second phase involving both supervised and unsupervised parenting time. In July 2021, plaintiff sought a court order requiring all of defendant's parenting time to be supervised because defendant continued to engage in inappropriate behavior with DHW, including threats, fear tactics, bullying, alienation of plaintiff and her family, and other emotional abuse. The trial court granted plaintiff's motion and ordered temporary supervised parenting time until the arbitration proceedings could be completed or plaintiff's motion could be further addressed by the court. The order also noted that, on the basis of defendant's oral motion, defendant's parenting time would be reduced temporarily to a single supervised one-hour visit via Zoom or FaceTime each week. However, defendant was free to resume his previous three-day in-person schedule with seven days written notice.

The instant appeal stems from defendant's August 2021 motion seeking a change of custody, modification of parenting time, and other relief. Defendant complained that 18 months after entry of the stipulated order regarding the parenting-time phases, he was "back at square one" with supervised parenting time and he was "under the microscope" while plaintiff's "dangerous and harmful behavior" went "unchecked and unmonitored." Defendant made several complaints about plaintiff's parenting decisions, and alleged that DHW had remained stagnant or regressed emotionally, socially, and physically while in plaintiff's sole custody. The trial court heard oral arguments, but ultimately denied defendant's motion without an evidentiary hearing, reasoning that defendant failed to establish the threshold burden of proper cause or a change of circumstances to reconsider custody.

Defendant argues on appeal that the trial court erred by summarily denying his motion because he presented sufficient evidence of proper cause or a change of circumstances. We disagree.

In matters involving child custody, " 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. "This Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard," which requires deference to the trial court's factual findings unless the evidence "clearly preponderate[s] in the opposite direction." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009) (quotation marks and citation omitted).

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). The threshold showing of proper cause or a change of circumstances must be established by a preponderance of the evidence. *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). Proper cause

refers to "an appropriate ground for legal action to be taken by the trial court," which "should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Id*. at 512. If the moving party advances a change-of-circumstances theory, he or she

> must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors. [*Id*. at 513-514.]

The trial court identified several reasons for denying defendant's motion, the most significant of which was that defendant's allegations mirrored those at issue at the time the last custody order was entered and were, therefore, insufficient to establish defendant's threshold burden. This was particularly true with respect to defendant's allegations regarding plaintiff. For instance, defendant argued in the instant motion that plaintiff infantilized DHW, "as she remains infantilized herself," and that she was overly dependent on her parents. In connection with the lengthy hearings that led to entry of the April 2019 custody order, defendant took issue with plaintiff's cloistered upbringing and religious affiliations and argued that she remained dependent on her parents and was unable to care for herself, that she would raise DHW in the same dependent situation if granted sole custody, and that she continued to breastfeed DHW in order to create an inappropriate bond and unhealthy dependence. Defendant alleged in his current motion that plaintiff planned to transfer DHW to a lower-rated elementary school without a rational basis. In 2019, defendant argued that plaintiff's limited intelligence left her unable to assure that DHW was properly educated and that plaintiff attempted to sabotage his attendance at Pierce Elementary School—the same school defendant apparently favored in his 2021 motion. In his current motion, defendant alleged that plaintiff disregarded DHW's wellbeing, ignored the value of his parent-child relationship with defendant, and actively tried to exclude defendant from DHW's life. In 2019, defendant similarly emphasized examples of incidents in which plaintiff purportedly disagreed with defendant's opinions regarding DHW out of spite and went out of her way to exclude defendant from important decisions. In the instant motion, defendant alleged that plaintiff did not follow up on recommended medical care for DHW, while simultaneously seeking unnecessary medical care in an effort to acquire evidence she could use against defendant. He likewise alleged in 2019 that plaintiff's decisions regarding DHW's medical care were improperly guided by her "legal position," rather than DHW's wellbeing. Lastly, in his current motion defendant alleged that plaintiff weaponized DHW's therapy by inserting herself into the therapeutic relationship, blocking defendant's involvement, and waiving the patient-therapist privilege, despite evidence that doing so would be harmful to DHW. DHW was seeing a different therapist in 2019, but defendant relied on similar arguments that plaintiff excluded him from DHW's medical treatment at that time.

While defendant's specific arguments regarding plaintiff's conduct varied to some extent since the last custody order was entered in 2019, the essential nature of the circumstances remained the same. Defendant did not believe in 2019 that plaintiff acted in DHW's best interests and accused her of excessive interference with the father-son relationship and defendant's ability to parent DHW. The same held true at the time of this motion. The trial court did not err by concluding that defendant failed to establish proper cause or a change of circumstances with respect to these issues. *Id*. at 514 (explaining that changed circumstances "must have occurred *after* entry of the last custody order" and that circumstances that were known at the time of the previous order will, in most situations, be insufficient to constitute proper cause).

However, defendant's current motion also raised a number of issues regarding DHW's development in plaintiff's sole custody. Defendant alleged that DHW (1) displayed habits that were inappropriate for his age, including bedwetting and daytime accidents, thumb sucking, and reliance on a security blanket; (2) lacked age-appropriate motor skills, such as the ability to tie his shoes or throw a ball; (3) lacked appropriate social skills; and (4) had "atrocious" hygiene. Concerning the latter three allegations, problems of this nature are commonly encountered by children and young adolescents and do not rise to the level of having a significant effect on DHW's wellbeing. *Id*. at 512-513. Defendant's first complaint is of more significance and requires closer consideration.

DHW was 9 or 10 years old at the time of defendant's motion. While his bladder control seems to have been an issue in the past, the ongoing nature is undoubtedly concerning given his age, as is his use of a security blanket and thumb sucking. These behaviors seem to be symptoms of, or associated with, DHW's delicate mental health. To the extent that DHW's mental health was declining in plaintiff's sole custody, it would have a significant effect on his overall wellbeing and be relevant to at least one best-interest factor. See MCL 722.23(b) (parties' capacity and disposition to provide, love, affection, and guidance); (c) (parties' capacity and disposition to provide food, clothing, medical care, and other material needs); (*l*) (any other factor relevant in the particular custody dispute). While we do not hesitate to say that declining mental health and related symptoms of the nature at issue here would in most cases amount to proper cause, the circumstances in this case are unique.

By way of an affidavit supporting his motion, defendant told the court that DHW had accidents with plaintiff, continued to wear "pull-ups," used a security blanket, and sucked his thumb. An affidavit offered by defendant's neighbor likewise indicated that she saw DHW sucking his thumb and holding his blanket, which he had not done "in a long time." The former parenting-time supervisor commented on DHW's toileting habits and accidents, but she had not seen DHW in her capacity as supervisor since January 2020 and, consequently, could offer little insight into DHW's wellbeing at the time of defendant's motion in the fall of 2021. Defendant also supported his motion with a text message from the current supervisor acknowledging that DWH sucked his thumb and had his blanket during a virtual parenting-time visit, as well as a progress note from DHW's doctor in which DHW's enuresis was discussed. The progress note indicated that DHW's daytime accidents purportedly increased "after some tough therapy sessions," which had also happened in the past. Notably, these proofs identified DHW's accidents and childish coping mechanisms, but did little to establish that these issues were caused by plaintiff's sole custody or would be alleviated by a change of custody.

-4-

More importantly, however, the trial court was aware of additional evidence that severely undermined defendant's request to change custody. One month before defendant filed his custody motion, plaintiff asked the court to order all of defendant's parenting time to be supervised on the basis of recent testimony from DHW's psychologist, Dr. Larry Friedberg. Dr. Friedberg testified that DHW was placed in the middle of his parents' conflicts and continued to feel extreme anxiety as a result. Without fully detailing DHW's disclosures, Dr. Friedberg confirmed that he had reason to believe defendant spoke negatively about plaintiff and her family; told DHW not to tell plaintiff or Dr. Friedberg certain things; interrogated DHW, pressuring him with loyalty or fear to answer; and threatened to move away and get rid of their dog. Dr. Friedberg attributed DHW's misbehavior and enuresis to ongoing anxiety and explained that DHW's recent disclosures about defendant's behavior during unsupervised parenting time made him believe that defendant's actions were the primary cause of DHW's anxiety. Dr. Friedberg acknowledged that plaintiff had not been a model parent either in terms of involving DHW in her conflict with defendant, but he did not believe plaintiff's behavior had the same degree of harmful effect on DHW.

While defendant's motion was pending, plaintiff also filed a show-cause motion alleging that defendant was attempting to interfere with the therapeutic relationship between DHW and Dr. Friedberg. Plaintiff produced parenting-time reports from the current supervisor in support of the motion. Concerning a remote visit that occurred on August 25, 2021, the supervisor reported that defendant told DHW that Dr. Friedberg lied to him and told everyone what DHW said. Notably, this occurred after Dr. Friedberg explicitly testified that confronting DHW about Dr. Friedberg's testimony would be very harmful to DHW and the therapeutic process. In light of the evidence that DHW's age-inappropriate behaviors were likely primarily caused by *defendant's* behaviors, the trial court did not err by concluding that defendant failed to establish proper cause or a change of circumstances sufficient to reconsider custody.

Defendant also argues that the trial court abused its discretion by deciding his motion without an evidentiary hearing. We disagree.

This Court reviews a trial court's decision regarding the necessity of an evidentiary hearing for an abuse of discretion. *Williams v Williams*, 214 Mich App 391, 399; 542 NW2d 892 (1995). For purposes of child custody cases, "an abuse of discretion occurs when the result is 'so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Kostreva v Kostreva*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 352029 and 353316); slip op at 2 n 1 (citation omitted).

"In deciding whether an evidentiary hearing is necessary with regard to a postjudgment motion to change custody, the court must determine, by requiring an offer of proof or otherwise, whether there are contested factual issues that must be resolved in order for the court to make an informed decision on the motion." MCR 3.210(C)(8). "Often times, the facts alleged to constitute proper cause or a change of circumstances will be undisputed, or the court can accept as true the facts allegedly comprising proper cause or a change of circumstances, and then decide if they are legally sufficient to satisfy the standard." *Vodvarka*, 259 Mich App at 512.

The trial court did not abuse its discretion by declining to hold an evidentiary hearing. As explained above, defendant's allegations against plaintiff were of the same general nature as the

arguments he made before the previous custody order was entered in 2019. The trial court could simply accept defendant's assertions about plaintiff as true and still determine that defendant failed to meet his threshold burden because the extreme level of acrimony between the parties and defendant's disapproval of plaintiff's decisions had existed throughout the case. Defendant's complaints about DHW's motor skills, social skills, and hygiene were not the sort of conditions that had a significant effect on his wellbeing and, thus, did not require further factual exploration. And although defendant offered proof that DHW was displaying behaviors that suggested a decline in his mental health, we will not fault the trial court for taking judicial notice of other record evidence regarding this matter. Defendant's motion conspicuously omitted unfavorable facts and created an impression that was entirely at odds with the balance of the record. To proceed with a full evidentiary hearing despite ample, recent evidence that DHW's troubling mental state and behaviors were likely attributable to defendant's conduct, rather than a deficiency in plaintiff's care, would be a needless and wasteful endeavor. The trial court was able to reach an informed decision on the existing record, and its refusal to hold an evidentiary hearing was not "palpably and grossly violative of fact and logic . . . ." *Kostreva* ___ Mich App at ___; slip op at 2 n 1 (quotation marks and citation omitted).

Affirmed.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood